IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| WHITE MARLIN OPEN, INC., et al., * <br> * <br> Plaintiffs, * <br> * <br> v. * <br> * <br> PHILLIP G. HEASLEY, * <br> * <br> Defendant. * | Civil Action No.: RDB-16-3105 |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## **MEMORANDUM ORDER**

This Memorandum Order recapitulates the results of the Motions Hearing conducted on March 29, 2017 to address defendant Philip G. Heasley's ("Heasley") Motion for Protective Order ("Heasley's Motion") (ECF No. 80). For the reasons stated on the record and as set forth below, Heasley's Motion is DENIED.

On February 23, 2017, the parties advised this Court that a discovery dispute had arisen among them with respect to defendant Heasley's refusal to respond to deposition questions and written discovery requests regarding "*whether* Heasley, Morris, Bohannon or Hagen[1] took polygraphs subsequent to the ones administered on August 21, 2016" by the White Marlin Open ("WMO"). (ECF No. 76) (emphasis in original.) *See also* ECF Nos. 75, 77. At the time, Heasley asserted that the very fact of whether he or his shipmates underwent any post-complaint polygraphs was privileged, both as attorney-client communications and as attorney work product. (ECF No. 77.)

---

[1] The four anglers on board the vessel *Kallianassa* during the 43rd Annual White Marlin Open in August 2016. *See* ECF No. 70 at 3.

1

During an off-the-record teleconference with this Court conducted on February 27, 2017, counsel for Heasley conceded that information regarding any post-complaint polygraphs which Heasley and his shipmates was not subject to the attorney client privilege, but maintained that this information and any related materials are privileged as attorney work product. *See* ECF No. 79.  This Court then issued an expedited briefing schedule to allow the parties to set forth fully their positions on this matter. (*Id.*) Pursuant to that schedule, Heasley's opening brief was due on March 8, 2017, WMO's response in opposition was due on March 15, 2017, and Heasley's reply was due on March 20, 2017. (*Id.*)

On March 8, 2017, Heasley filed his Motion for Protective Order on Post-Complaint Polygraph Information. (ECF No. 80.)  In his Motion, Heasley expanded upon his prior arguments, including his contention that he was not required to produce even a privilege log describing his assertion of privilege. (*Id.*)  Among its arguments in opposition to Heasley's Motion, WMO asserted that the fact of whether Heasley or the crew took subsequent polygraphs was not work product and that it was relevant, among other purposes, to determine if Heasley sought to avail himself of his rights under the Tournament Rules to take a polygraph of his own within ten days of his earlier, allegedly failed polygraphs. (ECF No. 81 at 3-4.)  WMO further asserted that even if the polygraphs were privileged work product, Heasley should be required to produce a privilege log stating "(1) whether he or any crew member took a subsequent polygraph, (2) when and where that polygraph was administered, (3) by whom it was administered, (4) who first consulted the examiner and when, (5) who hired the examiner, and (6) the purpose of the examination." (*Id.* at 7.)

A hearing was scheduled for March 29, 2017 to address Heasley's Motion. (Via email to counsel.)  Prior to the hearing, on March 27, 2017, counsel for plaintiffs Kostzyu and

2

Hutchison notified the Court via email that a new discovery dispute had arisen among the parties. Consistent with this Court's procedure regarding discovery disputes, the parties were directed to file two-page letters outlining their respective positions. (Via email to counsel.) The parties filed their letters on March 28, 2017. (ECF Nos. 89, 90, 91.)

In their letters, plaintiffs WMO, Kosztyu, and Hutchison stated that on March 23, 2017, Heasley produced a "purported supplemental expert disclosure, naming an entirely new expert witness—an additional polygraph examiner named John Palmatier." (ECF No. 89.) WMO explained that "**Dr. Palmatier's opinions relate to an entirely new subject matter—polygraph examinations taken by Mr. Heasley and Mr. Bohannon on March 16, 2017, and a polygraph examination taken by Mr. Hagen on March 18, 2017**." (*Id.*) (emphasis added.) Plaintiffs sought to exclude or strike any testimony and/or report offered by Dr. Palmatier as untimely pursuant to this Court's Scheduling Order (ECF Nos. 51, 79) and Rules 26 and 37 of the Federal Rules of Civil Procedure.[2] (*Id.*) Plaintiffs also noted that the opinions offered by Dr. Palmatier are "contrary to the opinions offered by Dr. Iacono, one of Heasley's original experts," who previously opined that "Heasley and the crew 'would not be expected to produce valid polygraph tests if they were ever retested.'" (*Id.*)

On March 29, 2017, this Court conducted a hearing to address Heasley's Motion and plaintiffs' Motions *in limine*. (ECF No. 92.) Having heard the arguments of counsel and for the reasons stated on the record, this Court concluded that Heasley's Motion would be denied because the facts of whether, when, where, and by whom Heasley and the crew underwent post-complaint polygraph examinations were not privileged fact work product.

---

[2] As set forth on the record, this Court construes plaintiffs' motions (ECF Nos. 89, 90) as Motions *in limine* and/or for discovery sanctions pursuant to Rule 37. Heasley has been accorded ample opportunity to respond to plaintiffs' motions, both through his responsive letter (ECF No. 91) and during the March 29, 2017 hearing. No further briefing on this matter will be entertained.

3

Specifically, this Court noted that it was not clear whether any post-complaint polygraphs were taken "in anticipation of litigation," as they may have been taken as part of Heasley's efforts to avail himself of the WMO Tournament Rules. Even more importantly, this Court stated that Heasley failed to demonstrate that the facts of whether, when, where, and by whom Heasley and the crew underwent post-complaint polygraph examinations involved "the mental impressions, conclusions, opinions, or legal theories concerning the litigation," and are, as a threshold matter, not privileged. *See generally Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Murray Sheet Metal Co.*, 967 F.2d 980, 984–85 (4th Cir. 1992). Indeed, this Court concluded that Heasley was required to produce this information pursuant to Federal Rule 26(b)(5)(A)(ii).[3]

Moreover, this Court noted that even if this information were privileged fact work product, Heasley unequivocally waived this privilege by attempting to make testimonial use of related work product material—that is, through his March 23, 2017 production of the Palmatier polygraph examinations of Heasley, Bohannon, and Hagen.[4] *See Nutramax Labs., Inc. v. Twin Labs. Inc.*, 183 F.R.D. 458, 463 (D. Md. 1998) (Grimm, J.) (citing *United States v. Nobles,* 422 U.S. 225, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975) for the proposition that where "counsel attempts to make a testimonial use of [work product information] the normal rules of evidence come into play with respect to cross-examination and production of the documents.") *See also Black & Decker Corp. v. United States*, 219 F.R.D. 87, 92 (D. Md. 2003)

---

[3] Heasley is not required to disclose at this point the contents of any post-complaint polygraph examinations, but plaintiffs may be entitled to any fact work product contained therein on a showing of substantial need. If appropriate, plaintiffs may raise this matter with the Court in the future.

[4] As noted on the record, the fact that Heasley would produce to plaintiffs the results of a post-complaint polygraph examination only three days after filing a reply brief seeking to exclude precisely such information is logically inconsistent and reflects a complete reversal on the part of Heasley.

("[T]he waiver of fact attorney work product may extend to all fact work product of the same subject matter…").[5]

Finally, this Court heard argument from counsel on plaintiffs' Motions *in limine* related to Heasley's untimely disclosure of Dr. Palmatier, but ultimately withheld judgment on this issue. (ECF Nos. 89, 90.) To assist this Court's assessment, Heasley agreed to produce for *in camera* review copies of the video evidence of Dr. Palmatier's polygraph examinations of Heasley and the shipmates.

Accordingly, for the reasons stated on the record and as clarified above, it is this 29th day of March, 2017, hereby ORDERED that:

1. Defendant Heasley's Motion for Protective Order (ECF No. 80) is DENIED;

2. Within seven (7) days of this Order, Heasley SHALL PRODUCE to plaintiffs the following information in response to plaintiffs' written discovery requests:

    a. Whether Heasley or any crew member underwent polygraph examinations subsequent to August 23, 2016;
    b. When those polygraphs were administered;
    c. Where those polygraphs were administered;
    d. By whom those polygraphs were administered;

3. Heasley SHALL PRODUCE for *in camera* review copies of the video evidence of Dr. Palmatier's polygraph examinations of Heasley and the shipmates;

4. Barring a subsequent Order of this Court, no further briefing on plaintiff's Motions *in limine* (ECF Nos. 89, 90) will be entertained.

_____/s/_____
Richard D. Bennett
United States District Judge

---

[5] In light of this ruling and pending Heasley's forthcoming disclosures, this Court did not reach the question of whether plaintiffs had demonstrated "substantial need" for the purportedly privileged fact work product— another basis on which plaintiffs might overcome Heasley's assertion of privilege. *See* Fed. R. Civ. P. 26(b)(3)(A). *See Sher v. Barclays Capital Inc.*, ELH-TJS-11-1982, 2013 WL 3279801, at *4 (D. Md. June 26, 2013).