# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| WHITE MARLIN OPEN, INC., et al., | * |
| Plaintiffs, | * |
| v. | * Civil Action No.: RDB-16-3105 |
| PHILLIP G. HEASLEY, | * |
| Defendant. | * |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## **MEMORANDUM ORDER**

This Memorandum Order addresses plaintiffs White Marlin Open ("WMO"), Mark Hutchison, and Richard Kosztyu's (collectively, "plaintiffs") Motions to Exclude the report and polygraph examinations prepared by defendant's putative expert witness, Dr. John Palmatier. ("Plaintiffs' Motions") (ECF Nos. 89, 90.) For the reasons stated below, Plaintiffs' Motions are GRANTED, and Defendant Heasley may not use or otherwise rely on Dr. Palmatier's report or polygraph examination results at any further stage of these proceedings.

## **BACKGROUND**

As explained in this Court's March 29, 2017 Memorandum Order[1] (ECF No. 94), while defendant Philip G. Heasley's ("Heasley") Motion for Protective Order (ECF No. 80) to preclude discovery of post-complaint polygraph materials was pending, Heasley disclosed

---

[1] *White Marlin Open, Inc. v. Heasley*, RDB-16-3105, 2017 WL 1165955 (D. Md. Mar. 29, 2017).

to plaintiffs a "purported supplemental expert disclosure, naming an entirely new expert witness—an additional polygraph examiner named John Palmatier." (ECF No. 89.) In letters to the Court dated March 28, 2017, and at a Motions Hearing conducted on March 29, 2017, plaintiffs argued that Dr. Palmatier's opinions and materials related to the polygraph examinations he performed should be excluded under Rules 26(a)(2) and 37(c) of the Federal Rules of Civil Procedure, as defendant Heasley failed to abide by this Court's Scheduling Order. (ECF Nos. 89, 90.)

In support of their Motion, plaintiffs assert (1) that Dr. Palmatier is not a timely named rebuttal witness and (2) that Dr. Palmatier's examinations and opinions do not constitute a supplemental disclosure under Rule 26(e)(2), as these materials "relate to an entirely new subject matter." (ECF No. 89.) Plaintiffs further argue that even if Dr. Palmatier's opinions and examinations could be classified as rebuttal or supplemental discovery materials, their untimely disclosure demands that they be excluded pursuant to Rule 37(c). (*Id.*)

In opposition to Plaintiffs' Motions, Heasley asserts (1) that WMO waived the ten-day window (under the Tournament Rules) in which Heasley could produce polygraph examination results, and (2) that Dr. Palmatier's opinions and examination materials constitute a timely rebuttal report. (ECF No. 91.)

At the March 29, 2017 Motions Hearing, this Court heard the parties' arguments on this matter, but reserved judgment on Plaintiffs' Motions and directed Heasley to produce for *in camera* review copies of the video evidence of Dr. Palmatier's polygraph examinations of Heasley and the shipmates. *See* ECF No. 94. The Court has now conducted that review.

2

## STANDARD OF REVIEW

Pursuant to Rule 37(c) of the Federal Rules of Civil Procedure, "[a] party who fails to properly disclose information under Rule 26(a)(2) is precluded from introducing the information at trial, unless the failure was substantially justified or harmless." *Montgomery v. CSX Transportation*, SAG-14-1520, 2016 WL 5390809, at *2 (D. Md. Sept. 27, 2016); Fed. R. Civ. P. 37(c). In determining whether such a failure was justified or harmless, this Court follows the five-factor test set forth by the United States Court of Appeals for the Fourth Circuit in *Southern States Rack And Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 596-97 (4th Cir. 2003). These factors are:

(1) the surprise to the party against whom the evidence would be offered;

(2) the ability of that party to cure the surprise;

(3) the extent to which allowing the evidence would disrupt the trial;

(4) the importance of the evidence; and

(5) the nondisclosing party's explanation for its failure to disclose the evidence.

*Southern States*, 318 F.3d at 596-97.

As this Court explained in *Montgomery*, "[t]he nondisclosing party bears the burden of establishing that its Rule 26(a)(2) violation does not warrant preclusion. While the Rule 37(c) sanction of striking expert testimony is self-executing and automatic, courts are conferred 'broad discretion' in determining whether a party's noncompliance with Rules 26(a)(2) and (e) was substantially justified or harmless." *Montgomery*, 2016 WL 5390809 at *3 (internal citations omitted) (citing *Southern States Rack and Fixture, Inc.*, 318 F.3d at 596). "The Fourth

Circuit has noted that the 'basic purpose' of Rule 37(c) is to prevent surprise and prejudice to the opposing party." *Id.*

**ANALYSIS**

As a threshold matter, this Court holds that plaintiffs correctly assert that defendants' production of Dr. Palmatier's report and polygraph examinations do not constitute a supplemental discovery disclosure under Rule 26(e)(2). As defendant's first reference to Dr. Palmatier came on March 23, 2017, it cannot be said that his report or other proposed materials "supplemented" any prior expert disclosure. Plaintiffs also correctly assert that Dr. Palmatier was not timely disclosed as an expert witness. As the deadline for identifying expert witnesses was January 30, 2017, it is evident that defendant's disclosure of Dr. Palmatier on March 23 was untimely. (ECF No. 51.) While Heasley seeks umbrage in the March 28 deadline he was afforded to "supplement his expert responses," this extension did not contemplate and could not reasonably be interpreted to contemplate the production of reports authored by a previously unnamed expert witness. (ECF No. 79.)

Applying the *Southern States* factors to determine whether these untimely disclosed discovery materials should be excluded, there can be no doubt that Heasley's belated disclosure came as a <u>significant</u> surprise to plaintiffs. As noted in this Court's March 29 Memorandum Order, Heasley had moved for a protective order to avoid having to respond to deposition questions and written discovery requests regarding "whether Heasley, Morris, Bohannon or Hagen[2] took polygraphs subsequent to the ones administered on August 21,

---

[2] The four anglers on board the vessel *Kallianassa* during the 43rd Annual White Marlin Open in August 2016. *See* ECF No. 70 at 3.

4

2016." *Heasley*, 2017 WL 1165955, at *1 (footnote in original).  Heasley did not disclose Dr. Palmatier's post-complaint polygraph examinations until three days after Heasley's Motion for Protective Order became fully ripe and only six days before a previously scheduled hearing on that Motion.[3]  As stated on the Record and in this Court's March 29 Memorandum Order, "the fact that Heasley would produce to plaintiffs the results of a post-complaint polygraph examination only three days after filing a reply brief seeking to exclude precisely such information is logically inconsistent and **reflects a complete reversal on the part of Heasley**." *Id.* at *2, n. 4 (emphasis added).  Thus, there can be no doubt that Heasley's disclosure of Dr. Palmatier's report and polygraph examinations came as a complete surprise to plaintiffs.

This Court next considers the second and third *Southern States* factors—"the ability of [the aggrieved] party to cure the surprise" and "the extent to which allowing the evidence would disrupt the trial." *Southern States*, 318 F.3d at 596-97.  It is readily apparent that allowing plaintiffs to seek to "cure the surprise" would require plaintiffs' counsel and their timely identified experts to engage in substantially more discovery, from supplementing expert reports, to depositions, to re-examining Heasley's other experts, including one such expert who opined that Heasley and the crew "would not be expected to produce valid polygraph tests if they were ever retested." (ECF No. 89 at 1-2, apparently quoting the report of Heasley's expert Dr. Iacono.)  Thus, permitting Heasley to utilize Dr. Palmatier's opinions and polygraph examinations would be highly prejudicial to plaintiffs who have been

---

[3] Heasley filed his Motion for Protective Order (ECF No. 80) on March 8; WMO filed its response in opposition to Heasley's Motion on March 15 (ECF No. 81); and Heasley filed his reply on March 20 (ECF No. 88).  The polygraphs were conducted on March 16 and March 18, and Heasley disclosed Dr. Palmatier's report and examinations to plaintiffs on March 23.

5

actively involved in discovery and preparation for the May 22, 2017 trial scheduled in this case. These *Southern States* factors favor the exclusion of Dr. Palmatier's report and examinations.

Furthermore, the fourth *Southern States* factor—"importance of the evidence"—weighs heavily against defendant. *Southern States*, 318 F.3d at 596-97. Having conducted an *in camera* review of video footage of Dr. Palmatier's polygraph examinations of Heasley, Bohannon, and Hagen (ECF No. 93), this Court finds that the proposed evidence will not help this Court "to determine a fact in issue" in this case. Fed. R. Evid. 702(a).[4] *See Wilkins v. Montgomery*, 751 F.3d 214, 222 (4th Cir. 2014) ("The district court also touched on the fourth factor [of the *Southern States* test], when it stated that the expert testimony would not assist a trier of fact."). Having carefully reviewed the over six hours of video produced by Heasley, this Court identifies several reasons why the proposed expert examinations and reports would not be helpful to the Court in this case. First, the number, scope, and depth of the questions which pertain to the WMO tournament and whether any Tournament Rules were violated are remarkably limited. On numerous occasions in all three examinations, Dr. Palmatier asks the same eleven (11) questions.[5] *See, e.g.,* Heasley 54:30—55:00; Bohannon

---

[4] Rule 702(a) of the Federal Rules of Evidence only allows the introduction of opinion expert testimony if "the expert's scientific, technical, or other specialized knowledge **will help the trier of fact to understand the evidence or to determine a fact in issue**." Fed. R. Evid. 702(a) (emphasis added).

[5] The questions, posed in several different sequences, are:
1. Is your name Philip / Kyle / John?
2. Are you sitting down?
3. Are you over 15 years of age?
4. Are the lights on in this room?
5. Would you lie about something important?
6. Would you lie to stay out of trouble?
7. Would you do something dishonest or illegal if there was a good chance you would not be caught?
8. Will you answer truthfully each question regarding the winning fish caught on August 9, 2016?

1:19:00—1:20:30; Hagen 48:25—49:50). These questions (and the examinee's answers "yes" or "no") provide little, if any, insight into whether or how any tournament rules may have been violated by the crew of the *Kallianassa*. Second, the examinations are rife with the coaching, commentary, and instruction of Dr. Palmatier. *See, e.g.,* Hagen 1:15:15-1:50:30;[6] Heasley 1:43:35—1:45:21;[7] Heasley 2:00:44—2:01:44.[8] While this Court need not determine whether Dr. Palmatier's methodology passes muster under the federal *Daubert* standard, such obvious instruction to the examinee renders the proposed evidence of little probative value. *See* Fed. R. Evid. 702; *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993). In sum, the proposed evidence fails to satisfy the first prong of Rule 702, as it is of very little help to the trier of fact. Thus, the fourth *Southern States* factor heavily favors exclusion of the untimely produced materials.

Finally, Heasley is unable to identify any reasonable "explanation for [his] failure to disclose the evidence" sooner. Heasley's suggestion that WMO somehow invited Heasley to undergo a polygraph nearly seven months after the Tournament is simply without merit.

---

9. Tuesday, August 9, 2016, did you personally commit a violation of the WMO tournament rules in the catching of the winning fish?
10. In the catching of the winning fish on Tuesday, August 9, 2016 did you personally commit a violation of the WMO tournament rules?
11. Are you telling the truth that you did not personally commit a violation of the WMO tournament rules in catching the winning fish on Tuesday, August 9, 2016?

[6] During Hagen's examination, Dr. Palmatier states that, "[e]verything I do is to help a person get through this," and goes on to instruct Hagen on relaxation methods and, "hypothetically," how Palmatier might teach someone to pass a polygraph examination.

[7] Dr. Palmatier directs Heasley: "Don't tighten…It's like somebody pushing you, but don't push back…No moving. Don't tighten your arm….The hardest thing is to do nothing." These instructions were made in response to Heasley's question, "Did I do better that time?"

[8] Dr. Palmatier states that: "[m]aybe if you talk to a psychologist or somebody who can help you be able to just sit and focus…" Later, Palmatier states that, "[a]nybody else that they ask to look at the data, they're gonna see it. And this is the kind of stuff that if we see it, immediately you think, 'ehh—this isn't good.'"

7

This Court must address at trial the issue of whether Heasley was accorded the opportunity to take his own polygraph examination under the Tournament Rules. However, there can be no doubt that Heasley's March 16, 2017 polygraph examination by Dr. Palmatier was well outside of that window. Moreover, in light of the extensive discovery (including expert discovery) undertaken in this case, Heasley has provided no reason why his decision to wait until five days before the discovery deadline to disclose Dr. Palmatier's report and polygraph examinations should be excused. Accordingly, the fifth *Southern States* factor favors exclusion of the untimely materials.

In sum, all of the *Southern States* factors which this Court must follow in evaluating Plaintiffs' Motions indicate that the untimely disclosed report and polygraph examinations of Dr. John Palmatier should be excluded. Accordingly, Plaintiffs' Motions (ECF Nos. 89, 90) are GRANTED.

## CONCLUSION

For the reasons stated above, Plaintiffs' Motions to Exclude (ECF Nos. 89, 90) the report and polygraph examinations of Dr. John Palmatier are GRANTED. Defendant Heasley may not use or otherwise rely on Dr. Palmatier's report or polygraph examination results at any further stage of these proceedings.

Dated: April 14, 2017 _____/s/_____
Richard D. Bennett
United States District Judge